The Ordinary.
Samuel Cooley, of the county of Hunterdon, died in January, 1855. His son, John B. Cooley, administered upon his estate. At September term, 1856, he exhibited his account for settlement to the Orphans Court of *497 tho county of Hunterdon, which was audited and allowed. By this account, tho administrator charged himself with $3147.16, as the assets of the estate. He prayed allowance for disbursements amounting to $444.96, leaving in his hands a net.balance of $2702.20.
In the year 1868, he exhibited his second and final account to the Orphans Court, to which exceptions were filed, and the account having been restated, a final decree was made thereon on the 16tli day of April, 1859. From that decree the accountant appealed to this court.
The first exception relied upon by the appellant to the decree of the Orphans Court is, that he is charged with two years’ interest on the balance in his hands at the date of his first settlement. That settlement was made at September term, 1856, two years and six months before the date of the decree charging him with interest. He was clearly not charged with interest for too great a time. The ground of the exception is, that the balance of the former account with which he was charged included items with which he was not properly chargeable, and which in fact were never collected by him. The allowance of these items against him have also been excepted to, and upon the validity of those exceptions must depend the propriety of the charge for interest. If the charge for principal is correct, the interest is clearly so.
The second exception is, that the court, by their decree, refused to allow a credit of $574,28 to the administrator, claimed by him as notes of Samuel L. Cooley, appraised and not collected. These notes had been appraised, and their amount is included in the first settlement, as a part of the sum with which the administrator charged himself. There was no dispute as to the amount due upon the notes. The only question was, whether the administrator was properly chargeable with the loss. The notes had been inventoried as good, and the administrator had upon his first settlement, eighteen months after the death of the intestate, charged himself with the amount. Three years had elapsed from the intestate’s death before the date of the decree, and it does *498 .not appear that during that period the administrator had made the least attempt to collect them, or even asked for (payment. The debtor was the brother of the intestate, and entitled with him to a share of the estate. He was the counsel of the administrator. The papers of the estate were placed in his hands after the father’s death. Upon a sale of .the real estate he became a purchaser, and the administrator became his security for the performance of the contract. There is no. decisive proof of the inability of the debtor to pay the notes. On the contrary, the witness, mainly relied on to prove hi's insolvency shows that, during a part of the period which elapsed after the death of the intestate, the debtor had been in active business, had owned property, and that he would have regarded the claim as good, during a part of that period, for fifty per cent. Under such circumstances, it was clearly the duty of the administrator to have made an honest effort to secure the claim. Having failed for years to do so, until the debtor became insolvent, after charging himself with the claim as good, showing that he regarded it as such, the court were right in refusing to correct the former settlement or to allow the administrator the amount of the claim. Upon the evidence in the case, if the notes were, as the administrator alleges, never collected, he is himself chargeable with the loss.
, The third exception is, that the court refused to allow the sum of two hundred dollars, it being the amount prayed allowance for by accountant, as taken by the widow for the use of the family. There is no evidence whatever that any sum whatever was claimed or taken by the widow under the provisions of the statute. The act of 1851, which was in force at the death of the intestate, made it obligatory upon the administrator, under certain circumstances, to have that amount of property appraised in the mode p>rescribed by the statute and set apart for the use of the family. But the act did not intend that, if no such appropriation was made, the amount should remain as a perquisite in the hands of the administrator to the prejudice of the claims of honest credi *499 tors. That no such appropriation is made is evident not only from the absence of proof of the fact, but also from the fact that the first account settled by the administrator contains no such claim.
The fourth exception is, that the court refused to allow a credit of six hundred and sixty-nine dollars, for which the accountant prayed allowance, as an error in the appraisement. It appears that there was in the hands of Samuel Cooley, the intestate, at his death, the sum of $600, which was received by him as one of the commissioners appointed to sell the real estate of William Yanderbelt, deceased. That sum was claimed by the administrator as part of the estate of Samuel Cooley; it was by his directions included in the inventory, and appraised as belonging to that estate. It was retained by the administrator until the settlement of his first account in September, 1859, and was included in that settlement as a part of the estate of Samuel Cooley. Subsequent to that time, and before the settlement of his second account, he paid the amount, with interest, to William Vleit, the surviving commissioner for the sale of the lands of Yanderbelt. He now insists, as he did before the Orphans Court, that he is entitled to have that sum allowed to him in full, although the estate is insolvent.
Whether the claim was properly a trust fund in the hands of Cooley, which should at once have been delivered by the administrator to its rightful owner, and not mingled with the estate of Samuel Cooley, it is needless now to determine. Had the administrator in good faith so treated it upon taking charge of the estate, the court would doubtless have protected him in the discharge of his duty. But, with a full knowledge of the facts, the administrator treated the fund as a part of the estate of his father. It was included in the inventory, accounted for in settlement, and commissions were allowed to the administrator upon it as a part of that estate. Under such a statement of facts, the administrator having treated the fund from the beginning as a part of the Cooley estate, and the heirs of Yanderbelt as creditors of that *500 estate, it does not lie in Ms mouth, after paying the claim in order to protect himself from loss by reason of the insolvency of the estate, now to insist that the fund was never a part of that estate, and was entitled to priority in payment over the claims of other creditors. The court is prompt to protect an administrator or trustee against loss resulting from an honest mistake, but will not relieve him of loss resulting from measures adopted solely with a view to his own interest.
There is no error in the decree of the court upon the exceptions to the administrator’s account.
In addition to the grounds of appeal to the decree of the court upon the exceptions, the appellant appeals from “the restatement of the account by the surrogate under the decree,” alleging that the account, as restated, is erroneous in not allowing to the administrator certain items of interest, nor witness fees and expenses on the hearing of the exceptions, nor commissions on the settlement of the estate, and that the costs are erroneously taxed.
It is alleged that the court, having made its decree upon the exceptions, the surrogate restated the account, and in so doing fell into errors, and from this erroneous restatement the appeal purports to have been taken. Clearly no appeal lies from a statement or restatement of an account by the surrogate. The appeal lies only from the decree of the court. It is in fact from the decree of the court allowing the account as stated that the appeal properly lies. This is not mere informality in the terms of the appeal; for admitting that the appeal be taken in technical terms from .the decree of the court allowing the account, the question still remains, does an appeal from a decree of the Orphans Court involve the propriety and legality of every item in the account, although no exception was taken and no’ opinion given upon such exception in the court below. Were these the only grounds of exception, as at present advised, I should dismiss the appeal as improvidently taken. But as the appeal on other grounds is properly here, I shall, without restingmipom *501 this point, consider the alleged errors apparent upon the face of the account.
The accountant claimed commissions on $1852.15. Ko exception was taken on that ground; and as the decree of the court is silent on the subject, the fair presumption is that the failure to allow commissions was the result of inadvertence, not of design. I shall allow commissions at four per cent, on the amount claimed, viz. $1852.15, amounting to $74.08.
The item in the taxed costs of $30 “ court fees, three judges,” is erroneous, and must be disallowed. To the correction of this item no objection is made by the respondents.
The account must be corrected in these particulars, and the rate per cent, ordered to be paid to the creditors altered accordingly. All other exceptions are disallowed.
Kb costs are allowed on the appeal.